JOHN M. MAURY vs. ALFRED INGRAHAM, Survivor, &c.

Where a bank by the terms of its charter is permitted to lend either its capital paid in or the notes it might issue, to twice the amount of its actual capital; it has a discretion in this respect, and the power to lend its notes is no less than that to lend its capital.

The right of the bank to make such loans, and the duty of the bank to redeem its notes when presented, are distinct questions, and in no way dependent upon each other. *Held*, that the failure of the bank to redeem its notes, whereby they became depreciated, cannot be urged as a defence of usury.

The failure of the bank to redeem its notes in specie, did not deprive it of the power to make loans, until its charter had been suspended or forfeited.

As a general rule, a bank in making loans, must confine itself to its capital or to its own notes, which it is legally liable to redeem; and if it deviate from its charter in this respect, and give out something else in making a loan, it can only justify its action, by showing that the bills or notes of other banks given out, were equal in value to the capital of the bank discounting, or if depreciated, that they were nevertheless estimated according to their true value.

When a bank or any other party loans depreciated bank paper or credits, and thereupon takes the note of the borrower for the nominal amount loaned, the contract is usurious. — Justice HANDY dissenting.

IN error from the circuit court of Adams county; Hon. Stanhope Posey, judge.

The opinion contains a statement of the facts of the case.

*R. North*, for appellant.

The market value of the bank-notes loaned, at seventy cents per dollar, was about $6,156.50, the nominal amount being about $8,795, or $9,000, minus the discount. The fund at the North, derived from plaintiff's cotton, and premium of sterling exchange, and five per cent. premium on the whole for domestic exchange, which was available to the bank in a few days after the loan to plaintiff, amounted to $5,042.15, which applied to and deducted as a credit from the principal of the debt of plaintiff, leaves $1,114.35, which is all that defendant was entitled to recover upon his demand. The verdict of the jury and judgment of the court below was for $8,124.96.

The contract of the plaintiff with the bank was for a loan of money. If he did not get money, but a substitute known by the parties to be of less value in market than the amount of dollars assumed to be loaned, and contracted to repay the nominal amount with interest thereon for giving day of payment; and the interest stipulated, together with the difference between the actual and the nominal amount of the thing loaned, exceeded the legal rate of interest, the contract was usurious. A review of the decisions of this court will fully sustain this proposition.

Apply the language of this court in the case of *Brown* v.

*Nevitt*, 27 Miss. 810, to this transaction : " that its character, in substance, is fixed by the actual value received under it; that it clearly appears that the consideration advanced was depreciated (paper) bank credits, known at the time not to be of the value at which they were loaned; and that under the repeated decisions of this court, the contract was usurious." And again : " It does not affect the character or consequences of the transaction, that the credits were used as so much cash for payment of debts. If the credits (notes) were not in market worth the value for which they were passed, the character of the contract was not changed by the use of the credits."

One and the same principle runs through all the cases of a loan of depreciated paper or credits, which may be traced to the leading case of a loan by sale of goods at more than their market value. *Lowe* v. *Waller*, Doug. 740. " The only question in cases like the present," said Lord Mansfield, " is, what is the real substance of the transaction? not, what is the color and form." And the transaction in this case was not held usurious, because the consideration was goods; nor because that which was intended as a loan of money was in color and form a sale of goods; but because the market value of the goods was less than the assumed or nominal value contracted to be paid. If the goods had been loaned or sold to the borrower at a sum of money which they would command in market, the transaction would have been without a flaw, notwithstanding the object in view was a loan of money.

So, in the case of *The Commercial Bank* v. *Bondurant*, 8 S. & M. R. 533; and *Cook* v. *The Bank of Lexington*, Ib. 543, the transactions were held usurious, not upon the ground that the paper loaned was bank-notes simply, nor because the notes were not of the issues of the lending bank, but for the reason that the notes were depreciated below their nominal value. The substance of the transaction in each case was, that the object of the contracting parties was a loan of money, and the paper was not in market worth the assumed or nominal amount of the loan, contracted to be repaid with interest. And the reasoning and conclusions of the judges rest upon the same principle in the cases of *Garther* v. *Farmers & Mechanics Bank*

15*

*of Georgetown,* 1 Peters, R. 41; *Farmers Loan and Trust Company* v. *Carroll,* 5 Barb. S. C. R. 657; *Dry Dock Bank* v. *Am. Ins. & Trust Company,* 3 Comst. R. 358, and kindred cases. And the case of *Harrison* v. *The Bank of Kentucky,* 2 J. J. Marshall, is a direct decision of the question now presented.

At the date of the loan the cotton pledged was assumed to be worth $9,000, or equivalent to a fund of that amount at the North; and it was part of the contract that the proceeds of the cotton should be applied to the payment of the money advanced or loaned. There was no stipulation for an allowance to plaintiff of the difference in actual value between specie or northern funds, and the bank-notes loaned. Every dollar of the northern funds was contracted to be applied to one nominal dollar and no more of the debt, which was, in fact, done to the extent of the proceeds of cotton actually realized; worse than this, the bank took a premium of five or more per cent. upon the northern fund besides.

2. The contract was usurious by reason of the reservation of the premium on domestic exchange. This was an additional profit to the bank, and so much interest in consideration of the loan, it was reserved and considered as a benefit. No loss to the bank was contemplated, as there was no ground upon which a loss could reasonably be apprehended. The difference of exchange was and had been in favor of the North when the contract was made; and it was an essential part of the scheme of the bank to draw upon the proceeds of the cotton immediately on its shipment. It has been contended that the bank had a right to reserve the premium of exchange on the North as a compensation for trouble. There was not, in the contract, any stipulation for compensation; on the contrary, it was expressly contracted that all expenses and charges upon the shipment transportation of the cotton and its sale at Liverpool should be paid by the plaintiff. There was no trouble or service in or about the cotton which was not charged upon the proceeds; and it is impossible to scrutinize the charges contained in the accounts rendered and annexed to the deposition of Callender, without being shocked at their enormity. The gross proceeds of the one hundred and fifty bales of cotton pledged

were, or may be stated at $7,439.53, upon which the charges were $2,112, besides some interest! The agents employed were the agents of plaintiff, and he agreed to risk the solvency of the factor. The custody and supervision of the cotton was only nominally in the bank, for the purpose of enabling the company to make use of its proceeds; it was in reality in the hands and under the care of the agents of plaintiff. Again, it is fully proved, by the testimony of Callender, that the premium of exchange reserved was with the bank an inducement for making the loan, or rather one of the inducements, — the reservation of seven per cent. interest was another; and there was a third and a fourth inducement. It nowhere appears that the premium of exchange was contracted for or intended as an indemnity or compensation for any trouble or service, real or imaginary, to be incurred or performed by the bank.

In connection with the subject of exchange, there is one feature in the contract, or its necessary incidents for which it is difficult to find any appropriate category in civil jurisprudence. By the contract plaintiff was required to pay the bank interest for the use of $9,000, less the discount for a period of four months; and by the same contract, the whole or a great part of this money was returned by the plaintiff in ten or fifteen days after the loan. As soon as the cotton was shipped at New Orleans, the bank estimated its value, and converted it into money by sale of exchange on its proceeds, upon which money plaintiff, by the contract, had paid interest for three and a half months after its return to the coffers of the bank.

The assignment and renewal of the note did not, under the circumstances, relieve the contract from the consequences of the usurious consideration upon which it was founded: 1. The assignees had notice of the usury; 2. There was no new consideration to support the new security; 3. The assignees were volunteers, and not purchasers for a valuable consideration. *Cuthbert* v. *Haley*, 8 Term R. 390; *Powell* v. *Waters*, 8 Cow. R. 693; *Judd* v. *Seaver*, 8 Paige, R. 553.

The assignee is in no better position than an ordinary agent or bailee. He held the original security under a general assignment of the effects of the bank for the benefit of creditors, with

a trust as to the residuum of the property for the benefit of the assignors. The security was not, in the first place, negotiable, being part due and dishonored. The assignees had a knowledge of all the facts constituting usury in the consideration. And even had they been ignorant, they could not be prejudiced. Then there was nothing paid for the security; nor was it applied to or taken in payment or satisfaction of any debt. It remained, and still remains in the hands of the agent of the bank, whose office it is to collect whatever the bank might lawfully demand, and apply the money to the discharge of the contracts of the bank. The creditors had no title to the old, and have none to the new or substituted securities. They have a right in equity to its avails, whatever they may be, great or inconsiderable, so far as necessary to satisfaction of their demands. Whatever right or interest the bank had in the debt, the creditors may in equity demand, when reduced to money. If nothing is collected from the plaintiff, the demands of creditors of the bank are unaffected thereby in their rights upon the bank.

*J. M. Murry*, on the same side.

*H. S. Eustis*, for appellees.

In January, 1838, Maury gave his note to the Grand Gulf Bank for $9,000. In July, 1838, the bank credited this note with $4,588.84, proceeds of his cotton, leaving a balance unpaid of $4,411.16. This is the note which is attacked for usury.

In 1842, the bank, by deed of assignment, passed this note to Ingraham and Reed. They deny all notice of the usury, and for any thing to the contrary in this record, they were not yet in this State at the time of the loan, and we believe such is the fact. At all events, this denial of notice of any usury in this note, is sustained by two verdicts. There is no ground for disturbing the verdicts upon this point of notice; for, 1st. The question of reservation of the domestic exchange being usurious, was not raised in the courts of this State until after the date of this loan. 2d. The proof is not decisive on what funds the loan was made to Maury, and much less so that Ingraham

and Reed had any information on the subject.    The record acquits them of notice.

On the 16th March, 1842, there was a balance due for principal and interest on this note of $5,696.91, for which balance Maury gave to Ingraham and Rees the five notes sued on in this action, and the $9,000 note was delivered up to him.

First, premising that Ingraham and Reed are not trustees, successors, nor in any shape representatives of · the defunct bank, but that they represent the interest of creditors of the bank, we ask, What was the consideration of the five notes sued on in this action?    *Ingraham* v. *Regan*, 1 Cushm. 227.

In *Cuthbert* v. *Haley*, 8 Term R. 390, Grose, J., says: " It is true that the consideration of the bond was the giving up the bills; but the bond was not given for the money loaned by Plank to the defendant."    So here the notes sued on, were not given for the money loaned by the bank to Maury.

Lawrence, J., says: " *In jure non remota sed proxima causa spectatur.*"

Le Blanc, J., says: " I am not aware of any case in which it has been holden, that where the original security has been cancelled, and another security given to another person ignorant of the usury that rendered the former security void, such second security is void in the hands of such third person."

The giving up the old note, constituted Ingraham and Reed *bonâ fide* holders of the new notes, the verdicts having sustained their denial of notice.    But we put our trust in the decisions of this court upon this point.    *Fellows* v. *Harris*, 12 S. & M. 446; *Love* v. *Taylor*, 4 Cushm. 567.

We quote the language of Judge Handy in the latter case: " It is now well settled, that if a party take a security or specific property in satisfaction and discharge of a preëxisting debt which is thereby extinguished, he is a *bonâ fide* purchaser, and not affected by previous equities," citing *Swift* v. *Tyson; Brush* v. *Scribner*, 3 B. Monroe.

Now we ask the court to adhere to the above decisions; and then there is no room for inquiry into the question of usury or no usury in the original note.    We presented the question, first, by demurrer to the bill of discovery; secondly, by replication,

denying notice. Two verdicts have sustained us, and they ought to stand.

*W. S. Wilson*, on the same side, filed an elaborate argument.

Mr. Justice FISHER delivered the opinion of the court.

The plaintiff below, brought a suit in the circuit court of Adams county, to recover the amount of five promissory notes made by the defendant, for the sum of $1,139 each, payable one, two, three, four, and five years after date. The jury having found a verdict for the plaintiff, and the court having rendered the proper judgment thereon, the defendant has prosecuted this writ of error.

The defence relied on in the court below, was usury.

It appears from the evidence introduced on the trial, that the notes now in question, were given by the defendant to the plaintiff and another, as assignees of the Grand Gulf Railroad and Banking Company, in renewal of the balance due, upon a note executed by the defendant to said bank on the 30th of January, 1838, for the sum of $9,000, payable four months after date. That the last-mentioned note was given by the defendant, in consideration of a loan of money made to him by the bank, at a discount or rate of interest, as authorized by the charter, at seven per cent. per annum.

That the bank at the time the loan was made, had suspended specie payment; in consequence of which its notes were depreciated, and were at a discount below gold or silver, of from twenty to thirty per cent. The loan in this instance having been made to the defendant, in the notes of the bank, and they being depreciated, as above stated, at the time, it is insisted that the transaction was affected with usury; inasmuch, as it is argued, the defendant contracted for a loan of money, in the legal sense of the term, or for that which was equivalent to it in value; and that the bank could therefore only receive interest upon the actual, and not upon the nominal value of the issues of the bank.

The bank was, by the terms of its charter, permitted to lend either its capital paid in, or the notes which it might issue, to

Maury *v.* Ingraham.

twice the amount of the actual capital. It had in this respect a discretion, and its power to lend its notes was no less than that to lend its capital. The question is not, what was the actual value of the notes thus lent, but, what was the right or power of the corporation under its charter, which declares that the bank might make loans of its notes, as above stated. The right to make such loans, and the duty to redeem its notes when presented for that purpose, are wholly distinct questions, and in no manner dependent one upon the other. In performing one act, it was but exercising a right given by its charter. In failing to perform the other, in redeeming its notes, whether such failure were a violation of its charter and cause of forfeiture of its corporate franchise or not, was a question alone for the State to inquire into, and has no connection whatever with those provisions of the charter regulating loans or discounts.

Before the objections urged by the defendant can rise to the dignity of a defence, he must show that the clauses of the charter regulating the conduct of the bank in making loans, were, in this particular instance, violated or disregarded by the bank. This is not pretended, but only that another provision, relating to another subject, had been disregarded. Admitting this to be true, the answer to it is, that the act or omission of duty was a matter which the government could alone investigate, and could, if so disposed, waive or entirely overlook. The question simply resolves itself into this. The bank was authorized to lend its notes at the rate of interest reserved in making this contract. Did its failure to pay specie on its notes, when presented for redemption, deprive it of this right to make loans? Clearly not; for if it be true that the government could only take advantage of the cause of forfeiture, and could waive any violation of duty in this respect on the part of the corporation, then it must follow, as a necessary consequence, that it could continue to transact business, and to do any and all acts within the scope of its charter, among which is the power to lend its notes, without regard to their true value in the market, and to receive a rate of interest according to the charter, not merely upon the market value of the notes, but

upon the amount which they bind the bank to pay in their redemption.

We admit that a different rule prevails where a bank, in making a loan, pays out the notes to the borrower of another bank. The distinction, however, between the two cases is manifest. As a general rule, a bank, in making a loan, must confine itself to its capital or to its own notes, which it is legally liable to redeem; and if it deviate from the letter of its charter in this respect, and give out something else in making a loan, it can only justify its action by showing that the transaction is in substance the same, that the notes of the other bank were equal in value to the capital of the bank, or, if depreciated, that they were nevertheless estimated according to their true value. A further manifest difference is, that the bank is always bound to redeem its own issues, and may be forced to receive them in collecting its debts. It incurs no such obligation in regard to a loan of the issues of another bank.

The question as to the exchange has already been decided by this court against the defendant.

Judgment affirmed.

Mr. Justice HANDY delivered the following dissenting opinion.

Differing, as I do, from the conclusion of a majority of the court in this case, I proceed to perform the duty imposed upon me by law, to state the reasons of my dissent.

The principal question upon which the case turns, and the one mostly considered by the majority of the court, is, whether a promissory note executed to an incorporated bank in consideration of the loan of her own notes, which were depreciated at the time but were loaned for their nominal value, the bank being in a state of suspension of specie payments, is usurious under our law.

In the various cases upon the subject of usury that have been decided by this court, this precise question has not been presented; but, in my judgment, the principle upon which it depends has been involved and considered in many of the previous cases in this court. That principle is, that where a bank or other party loans depreciated bank paper or credits, and thereupon takes

the note of the borrower for the nominal amount loaned, the contract is usurious. In *Archer* v. *Putnam*, 12 S. & M. 286, a note given in consideration of the sale of depreciated bank stock by an individual, is put upon the same ground as the sale of goods at a price beyond their real value. In *Walker* v. *Meek*, it is said, that "if a note be given for Brandon money, or other such money then at a discount, a recovery for its full nominal amount is not lawful," but the contract is usurious. 12 S. & M. 497. And the loan by a bank of the depreciated notes of another bank, is held to be usurious, because they were not worth in the market the nominal value at which they were loaned, and at the time of the loan. *Bondurant* v. *Commercial Bank*, 8 S. & M. 533; *Cook* v. *Bank of Lexington*, Ib. 543. And in *Brown* v. *Nevitt*, at this term, it is said, "that the character of such a transaction in substance is fixed by the actual value received under it; that it appears that the consideration advanced was depreciated bank credits, known at the time not to be of the value at which they were loaned; and, under the repeated decisions of this court, the contract was usurious."

The principle is clearly recognized in all these cases, and is sanctioned by the entire policy of the usury laws, that it is unlawful for the lender to commit an unjust exaction upon the borrower, and make an unconscientious gain through his loss, by the loan of that as money which was of less value than it purported to be; and that wherever bank-notes or credits or commercial securities are loaned or sold as money, or as a means of raising money, the transaction is usurious, if they are loaned or sold at more than their real market value in good money. The evil intended to be prevented by all usury laws is unjust loss and exaction from the borrower, rather than exorbitant gain to the lender.

If it be usurious, then, for a bank to loan, as at par, the depreciated paper of another bank, why is not the rule equally applicable to the case of a loan of her own paper, which is depreciated and not redeemable in specie at the time, and will not pass as so much good money? Tested by the principle above stated, I am unable to perceive why the rule does not apply with as much force to the one case as the other.

It is said that the bank is authorized by her charter to issue and loan her own notes, and that this right would be infringed by preventing her from recovering upon a loan of her notes, and the main object of the incorporation be thereby defeated. But such power is granted upon the condition that it will not be abused, and that the notes issued will be at all times redeemed in gold or silver. The object was to furnish a safe circulating medium for the community, and not to enable the corporation to exceed its capability at all times to pay its issues in money; and accordingly, whenever the privileges granted are violated in this respect, the State has the power to dissolve the corporation. The corporation has the powers granted, in the spirit and intent for which they were granted, and no further. Those powers are granted, subject to the general laws and policy of the State, unless specially excepted therefrom; and if, without such immunity, she sees proper to exercise her charter powers in violation of those laws and that policy, she acts without the protection of her charter, and upon the footing of every other person in the State; otherwise, a bank might discount notes through the medium of a gambling shop or lottery, set up as a means of exercising her charter power of loaning her notes. It is, therefore, not necessary that this violation of charter must have been made the cause of dissolution of the corporation by the State, in order to debar the bank of the enjoyment of the fruits of her illegal contracts. The violation of her charter powers is cause of forfeiture to be asserted by the State; her violation of the general laws and policy of the State, under color of her charter, constitutes an inherent vice in every contract so made, which any party sought to be charged by it may assert in a court of justice as rendering the contract illegal and void to the extent to which it is condemned by the law. And certainly the abuse of a power and the violation of law can never be held as a good reason for sustaining contracts of so injurious a tendency to the community as the original contract in this case.

But if the charter power to issue and loan her own notes be any justification to a bank in loaning and issuing her own notes as at par, when she was in a state of suspension and her notes

greatly depreciated, the same reason would apply with equal force to a loan of the depreciated paper of other banks, and render that legal; for she has as much power under her charter to deal in the paper of other banks as to issue her own. But though she has the power to deal in the paper of other banks, she has no power to loan it as equivalent to so much gold or silver when it is below that value in the market, and for the same reason, she violates the law when she loans her own notes as at par, when they are depreciated and she is in a state of suspension of specie payments which renders her notes greatly below the value of gold or silver in the market. Her charter contemplated the prompt redemption of all her notes by specie. Such was the paper she was authorized to issue and loan, and upon such paper she was authorized to take the interest limited by her charter. When she put forth other issues not convertible into specie and below that standard by twenty-five or thirty per cent., and was in a state of general suspension of payments in specie, upon no principle of right could she claim greater protection than she could in a loan of the depreciated paper of other banks. She was no longer loaning what her charter contemplated, but acting in open violation of it and the general policy and laws of the land. If there be any difference between the loan of her own depreciated notes and those of another bank, it would seem that the latter would be entitled to the more indulgence; for the loan of her own depreciated and irredeemable notes is an open violation of her charter coupled with usurious gain; and the other is but a violation of the general usury laws, which may be mitigated by the fact that in the course of her lawful business, she may have received the paper at par, and it depreciates upon her hands, and she may, with an honest intention so to dispose of it as not to sustain a loss, loan it out. Yet such transactions have repeatedly been held by this court to be usurious, on the ground that the funds loaned were below the value at which they were loaned, the borrower not receiving in value what the bank undertook to loan him.

Again, it is said that there is a difference in the two kinds of loans in this, that the borrower has the right to pay the bank in

her own notes, or to pay back the same notes he receives, and, therefore, that he may not be a loser. But this does not prove that the notes loaned were equal to good money to the borrower, and he may be a loser notwithstanding his right to pay back her own notes. If the borrower used the money in the purchase of property he must necessarily have sustained a loss to the same extent as it was depreciated, and have got that much less in value for the bank-notes he received. It might, however, occur, that before the maturity of his note to the bank, the notes of the bank might be at par, and not to be obtained for less than their nominal value. In that event, he could not recover his loss by procuring the notes of the bank; but his loss, to the extent of the depreciation of the notes when he received and used them, would be without remedy. In order, therefore, to render him safe in his privilege of paying in the notes of the bank, he would be compelled to keep the notes on hand, so as to be in readiness to pay them to the bank; and thus, he would not only receive no benefit from the loan, but would have to lose the interest on the note given by him to the bank.

It appears to me, therefore, that the right to pay in the notes of the bank furnishes no answer to the objection that the funds loaned by the bank were not of the value they purported to bear, and to that extent that an unjust and illegal exaction was made of the borrower; that the true and just view of the matter is, what real value did the borrower obtain from the bank by the notes received by him at the time of the loan. By that must his liability be tested and the rights of the bank governed. And whether the notes became afterwards equivalent to gold and silver, or utterly worthless, it is immaterial, the rights of the parties being fixed by the facts of the case at the time the loan was made.

But it is said that all the cases decided in this court upon this subject are those of loans of the paper of other banks, and that no case is to be found of a loan by a bank of her own depreciated paper, which has been held usurious. This may be true, and still it may not be satisfactory to the mind to prove that such a transaction would not be usurious. It is also true that no case has been produced by the researches of

counsel in this case, holding that such a loan is not usurious, except the case of *State Bank* v. *Cowan,* 8 Leigh, 247, which proceeds upon the ground that the borrower has the right to pay back the notes of the bank. This point does not appear to me to be well considered in that case, with reference to the principles by which the usury statutes are to be expounded; and the objections to the soundness of the view there taken do not seem to have been presented by counsel or examined by the the court. The reason upon which the decision is placed is unsatisfactory to my mind, and irreconcilable with the principles that lie at the foundation of our usury laws, as I have endeavored briefly to show above. A few cases to the contrary are to be found, and have been cited in argument; but they are loose and inconclusive in their reasoning, or the state of facts not sufficient properly to present the question. In this meagre and unsatisfactory state of adjudicated cases upon the subject, we may well conclude that there have been but few instances of a bank in a state of notorious suspension, and her issues below par from twenty to thirty per cent., still carrying on her business of discounting notes and issuing her own paper, payable on presentation.

But though such a state of things is novel, the principle governing such transactions is as old as the policy prohibitory of usury, and has been applied to every variety of case where an unjust gain has been exacted from the necessities of the borrower, who, under various pretences, has not received the full measure of legal value to which he was in justice entitled. *Lowe* v. *Waller,* Dougl. 735 ; 19 Ill. R. 509 ; 4 Hill, (N. Y.) 249.

Of the numerous cases upon the subject, the most apposite to the present are those of notes reserving interest taken in consideration of the loan of post-notes of banks, payable at a future day, and therefore not equivalent to specie when loaned. Such contracts have been held to be usurious upon the same principle as that applicable in the present case, — that the borrower did not get the full value of the nominal sum of money loaned to him. *Gaither* v. *Farmers & Mec. Bank,* 1 Peters, 41 ; 4 Hill, (N. Y.) 249.

16*

There is, in my judgment, no substantial difference between a loan of notes which are depreciated because they are payable at a future day, and those which are depreciated because, though then due, the bank cannot or will not pay them at the time of loaning them. If there be any difference, it is in favor of the former transaction ; for the presumption of law is that the bank will pay her liabilities when they become due, and therefore such paper must be of greater value in the market than that of a bank which openly refuses to pay its notes that are due, and when it must be wholly uncertain when, if ever, they will be paid. But in either case the funds received on the loan are not available to the borrower, and he sustains a loss to the amount of the depreciation. And I cannot perceive upon what just legal principle it is, that if a loan of post-notes of a bank as at par, when they are only under par to the amount of the interest for the short time they have to run between the date of their loan and their maturity, is usurious, a loan by a bank of her notes payable on their face on demand, but the bank is in a notorious state of suspension of payment at the time and so continues, in consequence of which the notes loaned are greatly depreciated, should be legal and free from usury. For it is manifest that the fact of the notes being nominally payable on demand is a mere form which gives no substantial value to them, and that by reason of the suspension of the bank the holder is subjected to the same, if not a greater, loss than if the notes had been payable at a future day.

I consider contracts of this character as usurious in the most odious form ; for they not only commit an injury upon the individual by putting upon him as money that which is greatly less valuable than he contracted for, and which it was the duty of the bank to furnish, but by such a course of conduct they inflict a serious evil upon the community by making their depreciated paper the circulating medium and standard of value, thereby preventing the establishment of a sound currency, and giving an inflated and artificial value to all kinds of property, to the incalculable injury of the entire community who are compelled to submit to it; as well those who have not, as those who have, given encouragement to such reckless and illegal

traffic by obtaining loans of such a currency from suspended or insolvent banks, which immediately becomes the circulating medium, and banishes all sound currency.  It is not sufficient to say that all this is a violation of charter, for which the corporation may be dissolved at the instance of the State.  It is also a violation of the general laws of the land, which may be invoked by any individual who is sought to be charged upon a contract contrary to those laws.

For these reasons, I am of opinion that the original note was usurious, and that the defendant in error having paid no valuable consideration for the assignment made to him, cannot be regarded as a holder for value, but must be considered as a mere trustee for, and in privity with, the bank; and that the judgment below, being in opposition to these views, is erroneous and should be reversed.